# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| RHONDA M. BAILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:17-CV-1353 NAB |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Rhonda M. Bailey's application for disability insurance benefits and supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. §§ 416, 423 *et seq.* Bailey alleged disability due to severely diseased 5th and 6th lumbar with osteoarthritis, possible COPD, heart, depression, possible diabetes, and thyroid problems. (Tr. 341.) The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 9.]

### Procedural History

Bailey initially filed applications for disability insurance benefits and supplemental security income on February 23, 2010. (Tr. 313-320.) The Social Security Administration ("SSA") denied Bailey's claims and she filed a timely request for a hearing before an administrative law judge ("ALJ"). (Tr. 161-67.) The SSA granted Bailey's request, and the first hearing took place on August 31, 2011 before ALJ Victor Horton. (Tr. 91-156, 168-91.) At the first hearing, Bailey testified and was represented by counsel. At the conclusion of the first

hearing, ALJ Horton decided to send Bailey for an orthopedic consultative examination. (Tr. 155.) A second hearing was held on April 20, 2012. (Tr. 32-90.) During the second hearing, ALJ Horton received testimony from Bailey, medical expert Dr. Anne Winkler, psychological expert Dr. James Reid, and vocational expert Jeffrey Magrowski. Bailey was represented by counsel at the second hearing, as well. ALJ Horton issued a written decision on September 13, 2012, finding that Bailey was not disabled. (Tr. 10-31.) Bailey requested review of the ALJ's decision from the Appeals Council. (Tr. 7.) On July 18, 2013, the Appeals Council denied Bailey's request for review. (Tr. 1-6.) The decision of the ALJ constituted the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000). Bailey then appealed the decision to this court in Cause Number 4:13-CV-1846 CAS. On September 29, 2015, Judge Charles Shaw reversed and remanded the final decision and directed the Commissioner to reconsider whether Bailey's diagnosis of pain disorder is a severe impairment and, if necessary to obtain additional medical evidence and conduct another hearing.

Upon remand, Bailey's claims were assigned to a new ALJ, Sheila McDonald. She held a third administrative hearing on August 9, 2016. (Tr. 716-786.) ALJ McDonald issued a partially favorable ruling on February 21, 2017. (Tr. 668-81.) The partially favorable ruling found that Bailey was physically disabled beginning June 4, 2014. (Tr. 678.) The decision of the ALJ stands as the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

Bailey filed this appeal on April 19, 2017. [Doc. 1.] The Commissioner filed an Answer and certified administrative transcript on June 26, 2017. [Docs. 10, 11.] Bailey filed a Brief in Support of her Complaint on September 25, 2017. [Doc. 16.] The Commissioner filed a Brief in Support of the Answer on November 20, 2017. [Doc. 21.]

## Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)A), 423(d)(1)(A).

The SSA uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's RFC to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the residual functional capacity ("RFC") to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451

(8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews the decision of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The Court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 726 (8th Cir. 2004). The Court must affirm the Commissioner's decision so long as it conforms to the law and is supported by substantial evidence on the record as a whole. *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 729 (8th Cir. 2003).

### Issues for Review

Bailey presents four errors for review. First, Bailey states that the ALJ should have found her period of disability began April 6, 2010 rather than June 2, 2014. Second, Bailey asserts that the ALJ erred by failing to find that she had a severe impairment of pain disorder. Third, she contends that the ALJ improperly gave the most weight to the medical opinion of medical expert, Dr. Michael Cremerius, a licensed psychologist. Finally, Bailey states that the

ALJ failed to investigate any arguments for granting benefits. The Commissioner contends that the ALJ's decision is supported by substantial evidence in the record as a whole and should be affirmed. The Court has reviewed the parties' briefs and the entire administrative record, including the hearing transcript and the medical evidence. For the reasons set forth below, the Court will reverse and remand the Commissioner's final decision.

## Discussion

### Alleged Onset Date

Bailey sought disability insurance benefits and SSI benefits. In her application for benefits and throughout her case, including in this court, she has alleged an onset date of July 29, 2009. (Tr. 313) After eight years, Bailey wishes to change her alleged onset date to April 6, 2010. After careful consideration, the Court will not allow an amendment of the alleged onset date at this stage of litigation.

In addition to determining whether an individual is disabled, the ALJ must also establish the onset date of disability. Titles II and XVI: Onset of Disability, SSR 83-20, 1983 WL 31249 at *1. Title II of the Social Security Act addresses for disability insurance benefits claims and Title XVI addresses SSI claims. 42 U.S.C. §§ 416, 423 *et seq.*

> In many claims, the onset date is critical; it may affect the period for which the individual can be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits. In title II worker claims, the amount of the benefit may be affected; in title XVI claims, the amount of the benefit payable for the first month of eligibility may be prorated. Consequently, it is essential that the onset date be correctly established and supported by the evidence, as explained in the policy statement.
>
> In title II cases, disability insurance benefits (DIB) may be paid for as many as 12 months before the month an application is filed. Therefore, the earlier the onset date is set, the longer is the period of disability and the greater the

protection received. Under title XVI, there is no retroactivity of payment. Supplemental security income (SSI) payments are prorated for the first month for which eligibility is established after application and after a period of ineligibility. Therefore, except for certain cases of aliens where an exact onset date of disability must be determined for eligibility purposes, the only instances when the specific date of onset must be separately determined for a title XVI case is when the onset is subsequent to the date of filing or when it is necessary to determine whether the duration requirement is met.

SSR 83-20 at *1.

ALJ McDonald's partially favorable ruling allows for Bailey to receive SSI benefits. Bailey cannot receive disability insurance benefits, however, because the ALJ found that her disability began after the date last insured to receive those benefits. Bailey's last date of eligibility for disability insurance benefits was June 30, 2012. Because Bailey's last date insured is June 30, 2012, Bailey has the burden to show that she had a disabling impairment before her insured status expired for disability insurance benefits. *See Barnett v. Shalala*, 996 F.2d 1221 (8th Cir. 1993) (*citing Basinger v. Heckler*, 725 F.2d 1166, 1168 (8th Cir. 1984)). "When an individual is no longer insured for Title II disability purposes, [the Court] will only consider her medical condition as of the date [she] was last insured." *Davidson v. Astrue,* 501 F.3d 987, 989 (8th Cir. 2007) "Evidence from outside the insured period can be used in helping to elucidate a medical condition during the time for which benefits may be rewarded." *Cox*, 471 F.3d at 907. But, the evidence from outside the period cannot serve as the only support for the disability claim. *Id.* The ALJ should use the date alleged by the individual if it is consistent with all of the evidence available. *Karlix v. Barnhart*, 457 F.3d 742, 747 (8th Cir. 2006).

In this case, ALJs Horton and McDonald used the onset date provided by Bailey. The Court will not allow Bailey to amend the onset date at this stage of the litigation. Bailey has not

cited any legal authority to support the Court changing a claimant's onset date during an appeal to the district court where the ALJ used the onset date provided by the claimant.

**ALJ Development of the Record**

Next, Bailey contends that the ALJ failed to fully and fairly develop the arguments both for and against granting benefits. Bailey states that there was "no indication that the ALJ considered, much less investigated, arguments for **granting** benefits." (Pl.'s Br. At 13) (emphasis in original). In support of Bailey's assertions, she mentions that both of the ALJs requested investigations of her and she refutes the evidence found during the investigations by referencing her testimony, her caseworker's testimony, and her use of home health care services. Essentially, Bailey is asserting that the ALJs were biased against her.

The ALJ has a duty to fully develop the record. *Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006). "The ALJ possesses no interest in denying benefits and must act neutrally in developing the record." *Snead v. Barnhart*, 360 F.3d 834, 839 (8th Cir. 2004). "There is a 'presumption of honesty and integrity in those serving as adjudicators.'" *Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011) (citing *Withrow v. Larkin,* 421 U.S. 35, 47 (1975)). "ALJs and other similar quasi-judicial administrative officers are presumed to be unbiased." *Perkins v. Astrue*, 648 F.3d 892, 902 (8th Cir. 2011). "A claimant bears the burden of producing sufficient evidence to overcome this presumption." *Perkins*, 648 F.3d at 902-903. Bailey is "required to show that the ALJ's behavior, in the context of the whole case, was so extreme as to display clear inability to render fair judgment." *Id.* at 903. Bailey has not overcome the presumption that the ALJ is not biased. Bailey's complaints indicate that she disagreed with how the ALJ developed the record and the ALJ's ultimate conclusions. Therefore, the Court does not find that the ALJ failed to neutrally develop the record.

**Severe Impairment and Testimony of Dr. Cremerius**

Next, Bailey contends that ALJ McDonald failed to provide any support for her finding that Bailey's pain disorder was not a severe impairment. Bailey also contends that the ALJ erred by giving Dr. Cremerius' testimony the most weight, which rejected pain disorder as a medically determinable impairment. Because the ALJ gave this opinion the most weight, the issue of his opinion and the weight given to it will be addressed together.

As stated before, this case came to the district court previously and was remanded to the SSA. Judge Shaw remanded the case, because ALJ Horton had not addressed the existence of Bailey's pain disorder in the final decision. (Tr. 842-44.) Therefore, Judge Shaw remanded this case so that the ALJ could determine whether the pain disorder was a severe impairment, and if so, its effects on her mental and physical ability to perform work activities at steps 3 and 4. (Tr. 844-45.)

Upon remand, ALJ McDonald obtained additional medical expert testimony from Dr. Michael Cremerius, a psychologist, regarding Bailey's diagnosed pain disorder and considered whether it was a severe impairment at step 2. She found that Bailey's severe impairments included major depressive disorder, an anxiety disorder, and substance abuse disorder. (Tr. 671.) The ALJ specifically found that Bailey's pain disorder diagnosis was "not a correct diagnosis."

In this case, there are many medical opinions in this case. The Court will give a summary of Bailey's mental health treatment, various diagnoses, and the RFC assessments at issue in this case, then discuss the ALJ's assessment of Bailey's pain disorder diagnosis at step 2 and the evaluation of Dr. Cremerius' opinion.

**State Agency Psychologists**

Three state agency psychologists provided opinions regarding Bailey. These psychologists did not examine or provide treatment to Bailey, but provided opinions and testimony based on the medical record that existed at the time of their evaluation. Both ALJs took medical expert testimony from licensed psychologists during the second and third administrative hearings.

"State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i)[1]. "Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence," except for the determination of disability. 20 C.F.R. §§ 404.1512(b)(8), 404.1527(e)(2)(i), 416.912(b)(1)(viii), 416.927(e)(2)(i). "Administrative law judges are not bound by any findings made by State agency medical or psychological consultants or other program physicians or psychologists." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). Their opinions are evaluated under the standards outlined in 20 C.F.R. §§ 404.1527(c), 416.927(c).

**Dr. Judy Martin**

On May 24, 2010, Dr. Judy K. Martin, a psychiatrist, completed a Psychiatric Review Technique and Mental Residual Functional Capacity Assessment for Bailey. (Tr. 463-477.) Dr. Martin reviewed the medical records available at the time from two consultative examiners, Dr.

---

[1] Many Social Security regulations were amended effective March 27, 2017. Per 20 C.F.R. § 404.1527, the court will use the regulations in effect at the time that this claim was filed.

Musaddeque Ahmad and Dr. Lauretta Walker. (Tr. 473.) Dr. Martin opined that Bailey's allegations of depression were credible, her mental impairment was severe, and it would impose significant limitation, but did not meet listing level severity. (Tr. 473.) Dr. Martin wrote, "that her [activities of daily living] are primarily limited due to claimant's physical condition with depression." (Tr. 473.) Dr. Martin further opined that Bailey had mild restrictions in activities of daily living and maintaining social functioning and moderate limitations in maintaining, concentration, persistence, or pace. (Tr. 471.) She further found that Bailey was moderately limited in the ability to understand and remember detailed instructions; complete a normal workday and workweek without interruptions from psychologically based symptoms; and perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 475-76.) Dr. Martin opined that Bailey was moderately limited in the ability to interact appropriately with the public, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in the workplace. (Tr. 476.) She determined that Bailey was markedly limited in the ability to carry out detailed instructions. (Tr. 475.) She found that Bailey could understand, remember, and carry out simple instructions over the course of a normal workweek with customary breaks, retains the ability to get along with coworkers and supervisors, and adapt to changes in a routine work like setting. (Tr. 473.) The ALJ gave significant weight to Dr. Martin's opinion, because the ALJ found it "generally consistent with the claimant's activities and the observations of her treating doctors." (Tr. 676.)

### Dr. James Reid

In the second administrative hearing on April 20, 2012, ALJ Horton received medical expert testimony from Dr. James Reid. Dr. Reid began his testimony by reviewing Bailey's medical record. (Tr. 48.) Dr. Reid also noted that Bailey had told a physician's assistant on

August 22, 2011 that she was an IV meth user for a long time, but had been off drugs for about 6 months[2]. (Tr. 48.) Dr. Reid also noted that Bailey tested positive for methamphetamines on May 6, 2011[3]. (Tr. 49.) He stated that she entered a pain management program and contract. (Tr. 49.) Dr. Reid stated that Bailey "must have pain in order to get her narcotic medication." (Tr. 49.) He testified as follows:

> there may be a 12.07 issue, somatoform disorder. There's clearly one diagnosed at 15F, they say with both medical and psychological factors for the somatoform pain disorder. And certainly if she's using methamphetamine and taking all these narcotic pain medications, she's going to have auditory hallucinations and paranoia and periods of anxiety. So I don't know her – it's not clear to [me] that her depression and anxiety is not substance induced.

(Tr. 49.) Dr. Reid then states, "she has been described as having severe major depression with psychotic features. ... she would, I believe, 12.09 under – as I evaluate under the 12.04 condition." (Tr. 51.) Considering the consultative examinations in the record and the use of a nurse in her home, Dr. Reid opined that Bailey's activities of daily living, social functioning, concentration, persistence, and pace, in the presence of addiction would be markedly impaired. (Tr. 53-55.) Dr. Reid opined that it would take nine months to a year for sobriety, because methamphetamines are a "debilitating substance that really does take a toll both physically and psychologically on the individual." (Tr. 55.) He further opined that if Bailey were clean and sober, her activities of daily living from a mental perspective would be mildly impaired, her social functioning might be moderately impaired, her concentration, persistence, and pace would only be mildly impaired. (Tr. 56.) He opined that she would be moderately impaired in complex

---

[2] Dr. Reid is referring to a note from a physician's assistant during an emergency room visit stating the following: "pt also said that she was an iv meth user for a very long time, but has been off the drugs for about six months." (Tr. 505.)
[3] Bailey's doctor's note states, "5/6/11 INITIAL UDS confirmed for methamphetamine." (Tr. 555)

tasks.  (Tr. 56.)  The ALJ simply wrote that Dr. Reid testified that Bailey had "somatoform disorder, but new evidence shows that his diagnosis was incorrect.  The somatoform disorder is not a medically determinable impairment."  (Tr. 671.)

### Dr. Michael Cremerius

At the third administrative hearing, on August 9, 2016, Dr. Michael Cremerius, a licensed psychologist, testified.  Dr. Cremerius also began his testimony by reviewing evidence from the medical record.  Dr. Cremerius then opined that none of the impairments individually or in combination met or equaled a listing.  (Tr. 723.)  He opined that Bailey had mild restrictions in activities of daily living and moderate limitations in social functioning, concentration, persistence, and pace based on the reported depression and anxiety symptoms.  (Tr. 723.)  He stated that he did not see any evidence of DAA (Drug Addiction and Alcoholism) being material. (Tr. 724.)  Dr. Cremerius further testified, "There's no evidence of somatoform disorder documented in the treating sources that I went from."  (Tr. 724.)  He stated that psychosis was not supported in the file and "It's primarily a pain case."  (Tr. 725.)  He stated that there was no support for the limitations given by consultative examiner, Dr. Thomas Spencer.  (Tr. 725-26.) Dr. Cremerius also testified, "I think that it seems as though the mental impairment or treatment is sporadic and occasional."  (Tr. 726.)  Dr. Cremerius recommended limiting Bailey to understanding and remembering simple instructions, performing simple routine tasks, incidental contact with the public, occasional contact with co-workers and supervisors, and preclude fast paced tasks with strict production quotas, but end of day production quotas would be fine.  (Tr. 727.)

On examination by Bailey's counsel, Dr. Cremerius testified that pain disorder was not a somatoform disorder or a mental disorder.  When Bailey's counsel asked him to define pain

disorder, he answered, "You would have to ask her physicians who assigned the diagnosis." (Tr. 728.) He further testified, "There's not a lot of evidence for a psychotic impairment in the record, certainly not through the record." Finally, he testified "I think the record shows that she has depression. She has anxiety. And she does complain about pain. Now, how much they influence each other I don't have any idea." (Tr. 733.) Dr. Cremerius stated that as a psychologist, he was not an expert on psychiatric medications. (Tr. 735.)

The ALJ gave the most weight to Dr. Cremerius' opinion. She wrote, "His assessment was well reasoned and supported by objective medical evidence, her activities of daily living, and the observations of her healthcare providers … Dr. Cremerius was able to review the most comprehensive set of information. He is familiar with Social Security Administration Programs, Rules, and Regulations." (Tr. 678.) The ALJ used Dr. Cremerius' opinion as the basis for the mental limitations contained in the RFC determination. (Tr. 678.)

### Consultative Examiners

#### Dr. Musaddeque Ahmad

Dr. Musaddeque Ahmad, a general practitioner, completed a disability consultation for Bailey on April 6, 2010. (Tr. 435-38.) Bailey reported to Dr. Ahmad that she was depressed, anxious, but denied sleep disturbance, suicidal ideation, paranoia, or hallucinations. (Tr. 437.) She identified financial difficulties as a stressor. (Tr. 437.) He diagnosed her with mild depression and anxiety, "most likely secondary to financial stress." (Tr. 437.) He wrote "no significant limitations noted" for mental ability. (Tr. 438.) The ALJ did not address Dr. Ahmad's consultation.

**Dr. Lauretta Walker**

Dr. Lauretta Walker, a licensed psychologist, was the first consultative examiner from the SSA. She prepared a psychological report regarding Bailey on April 13, 2010. In her mental status exam, Dr. Walker found that Bailey's "speech and thoughts were often disjointed and she was rarely able to put a sentence together." (Tr. 446.) Bailey "would begin to say something and stop and seem to not be able to come up with a word." (Tr. 446.) Bailey reported that she was "anxious, depressed, and slept a lot." (Tr. 446-47.) Bailey reported one suicide attempt in high school, but now has thoughts without any attempts. (Tr. 447.) Bailey denied any visual hallucinations, but stated she had auditory hallucinations, describing them as whispers. (Tr. 447.) Dr. Walker diagnosed Bailey with major depression severe. (Tr. 447.) Dr. Walker opined that Bailey, "appears to be very depressed and has diminished ability to think clearly and follow through with actions." (Tr. 447.) She also opined that Bailey would be "able to understand and follow simple directions at this time there would be at least moderate impairment in this area. Likewise she would have moderate to severe problems in getting along with others on the job and adapting to changes." (Tr. 448.) The ALJ gave some weight to the part of Dr. Walker's assessment that Bailey had mild to moderate symptoms. (Tr. 676.) The ALJ found the parts of Dr. Walker's assessment that Bailey had moderate to severe problems with social functioning and adapting to changes as inconsistent with Bailey's daily activities and did not give it significant weight. (Tr. 676.)

**Dr. Thomas J. Spencer**

On November 8, 2011, Dr. Thomas J. Spencer, a licensed psychologist, examined Bailey for a consultative examination. (Tr. 576-586.) Dr. Spencer described Bailey's speech as

"pressured and [her] flow of thought was tangential."  (Tr. 577.)  He noted that he found it difficult to keep her on task.  (Tr. 577.)  He observed that she "looked to be in some degree of physical distress."  (Tr. 578.)  He also observed that she "was fidgety and restless as she participated in the interview" and "presented as anxious and dysphoric." (Tr. 579.)  He described her as cooperative and a decent historian.  (Tr. 579.)  He noted that her "insight and judgment are questionable."  (Tr. 579.)  She denied homicidal and suicidal thoughts.  (Tr. 579.)  Although she told him that she heard voices mostly at night, she denied hearing voices during the evaluation and was not observed responding to internal stimuli.  (Tr. 577, 579.)  She mentioned that she locks herself in the bathroom when someone comes to her house, because she was scared.  (Tr. 577.)  She also mentioned "demons" and "her father coming to the door."  She stated the voices tell her that people are coming to get her and want to kill her and finish her.  (Tr. 577.)  She reported hearing the voices for several years.  (Tr. 577.)  She also reported being forgetful with poor attention, concentration, and energy.  (Tr. 577.)

Dr. Spencer administered the Minnesota Multiphasic Personality Inventory-2 (MMPI-2). Her score of 2/7 is "commonly seen in psychiatric populations" and reflects "people who are depressed, agitated, restless, and nervous."  (Tr. 579.)  Dr. Spencer diagnosed Bailey with major depressive disorder, recurrent, severe with psychotic features, anxiety disorder not otherwise specified and posttraumatic stress disorder (PTSD) cannot be ruled out.  (Tr. 579-80.)  He opined that she had moderate limitations in understanding, remembering, and carrying out simple instructions, interacting appropriately with the public, supervisors, and co-workers.  (Tr. 584-85.) He opined that she had marked limitations in understanding, remembering, and carrying out complex instructions, the ability to make judgments on complex work related decisions, and responding appropriately to usual work situations and to changes in a routine work setting.  (Tr.

585.)  Dr. Spencer noted that she denied a history of drug and alcohol abuse.  (Tr. 580, 585.)
The ALJ stated that Dr. Spencer's opinion cannot be given significant weight, because
"assessing the claimant as having serious symptoms appears to be based on her subjective
description, and was inconsistent with her typical daily activities … and for that reason it cannot
be given significant weight."  (Tr. 677.)

### Dr. Steven Adams and Diana White, LPC

On January 23, 2014, Diane White, a licensed professional counselor, and Dr. Steven
Adams, a licensed psychologist, performed a psychological evaluation for Bailey's application
for Medicaid benefits.  (Tr. 1196-1199.)  Bailey appeared oriented to person, time, and place.
(Tr. 1198.)  Bailey's mood was described as depressed and anxious.  (Tr. 1198.)  She was tearful
throughout the interview and her affect was consistent with conversation and facial expression.
(Tr. 1198.)  Her speech was pressured at times.  (Tr. 1198.)  Her general fund of information was
poor.  (Tr. 1198.)  Verbal concepts were understood at an average level and abstract concepts at a
below average level.   (Tr. 1198-99.)   Bailey reported auditory hallucinations and suicidal
ideation, but no current plan or intent.  (Tr. 1199.)  Bailey denied any drug use.  (Tr. 1198.)
White described Bailey's judgment and impulse control as poor.  (Tr. 1199.)  In evaluating her
functional capacity, the report stated the following:

> Regarding her functional capacity she seems to be able to
> understand and remember simple instructions.  She does not
> seem able to sustain her concentration and persistence on
> simple tasks.   She does not seem able to interact in
> moderately demanding social situations.  She does not seem
> able to adapt to a typical work environment.

(Tr. 1199.)  The diagnostic interview and mental status exam were completed by Ms. White.  Dr.
Adams reviewed and endorsed the diagnosis of major depressive disorder, recurrent, severe with

psychotic features, PTSD, and rule out personality disorder.  (Tr. 1199.)  The ALJ stated that Dr. Adams' opinion could not be given substantial weight for several reasons.  The ALJ wrote that the symptoms and limitations in his opinion "are not an accurate description of the claimant for any 12-month period of time, and are inconsistent with the other information we have about the claimant activities of daily living."  (Tr. 677.)  The ALJ also wrote "the assessment is based on information that does not reflect the claimant's condition over the longitudinal record, it cannot be given significant weight."  (Tr. 677.)

**Dr. Price Gholson**

On March 30, 2016, Dr. Price Gholson, a licensed psychologist, completed a psychological disability evaluation of Bailey.  (Tr. 1173-80.)  In the mental status examination, Dr. Gholson determined that Bailey's appearance and thought processes was mostly low/below average.  (Tr. 1177.)  Her affect was observed to be low/below average.  (Tr. 1177.)  Dr. Gholson assessed Bailey's intellectual functions as average, except her recent and remote memory, which were assessed as low/below average.  (Tr. 1177.)  Her thought content regarding presence of grandiose delusions, presence of illusions (actual stimuli misinterpreted) was very low/inadequate.  (Tr. 1177.)  The presence of paranoid ideation was very high.  (Tr. 1177.)  Dr. Gholson wrote that Bailey's non-verbal behavior was "highly anxious" and her attention and concentration were "poor."  (Tr. 1178.)  Dr. Gholson diagnosed her with panic disorder with agoraphobia, PTSD, and depression.  (Tr.1178.)  The ALJ did not give significant weight to Dr. Gholson's opinion stating that the global assessment functioning score (GAF) given by Dr. Gholson, "was not a reflection of her psychological functioning."  (Tr. 677.)

**Treating Providers**

**Dr. Patrick Oruwari**

In May 2011, Bailey began treatment with Dr. Patrick Oruwari, a psychiatrist. Bailey received treatment from Dr. Oruwari between May 2011 and February 2012. (Tr. 528-31, 595-98.) At her initial visit with Dr. Oruwari diagnosed Bailey with major depressive disorder and panic disorder with psychological and medical factors. (Tr. 528.) Dr. Oruwari, noted that Bailey's thought process was logical and goal directed. (Tr. 528.) He also described Bailey as "tearful and very emotional." (Tr. 528.) She reported auditory hallucinations and that she hears whispers that they will make her worse. (Tr. 528.) She reported low energy and motivation. (Tr. 528.) Dr. Oruwari also subsequently diagnosed her with social anxiety. (Tr. 531.) Bailey consistently presented with a depressed and/or anxious mood. (Tr. 530-31, 595-97.) The ALJ did not give significant weight to Dr. Oruwari's opinion, because she stated, "that the low GAF scores are not an accurate reflection of her ability to function, and cannot be given significant weight." (Tr. 676.)

**Jared Arnett, PMHNP**

Bailey received counseling from Jared Arnett, a psychiatric mental health nurse practitioner, beginning in May 2015. (Tr. 1188-95, 1201-1203, 1387-1442.) Mr. Arnett completed a psychiatric evaluation of Bailey on May 22, 2015. (Tr. 1389-92.) During this evaluation, Mr. Arnett noted that Bailey was dressed for the weather. (Tr. 1391.) Her speech was normal, but she was tearful at times during the interview. (Tr. 1391.) Her thought process was logical and goal directed. (Tr. 1391.) She denied auditory hallucinations, but reported that she experienced them in the past. (Tr. 1391.) She described her mood as "sad, I guess." (Tr.

1391.)  She denied a history of abusing drugs.  (Tr. 1391.)  Mr. Arnett diagnosed her with major depressive disorder, recurrent, severe.  (Tr. 1391.)  Mr. Arnett also prescribed Zoloft, because she was not currently taking any medication.  (Tr. 1391-92.)  During her treatment, Baily began to report hearing voices at times.  (Tr. 1396, 1399, 1401, 1409, 1415, 1419, 1439.)  At other times, her mental status examinations were normal.  Mr. Arnett noted that with sustained medication compliance and treatment Bailey would have improved mental health.

On August 3, 2016, Mr. Arnett completed a medical source statement regarding the severity of Bailey's impairments.  (Tr. 1201-1203.)  Mr. Arnett wrote " Rhonda experiences severe depression that has shown minimal response to treatment."  (Tr. 1201.)  He opined that her activities of daily living were seriously limited, her social functioning was unable to meet competitive standards, and her concentration, persistence, and pace were seriously limited.  (Tr. 1202.)  He further wrote she "has consistently presented with depressed mood with poor ability to cope with stress.  She has low energy and low motivations.  She lacks joy in daily activities. She struggles to complete ADL's."  (Tr. 1202.)  He also noted, "She experiences severe depression which can increase the experience of pain."  (Tr. 1202.)  He opined that she would miss work on average 12 days per month secondary to medical conditions or treatment.  (Tr. 1203.)  The ALJ did not give significant weight to Mr. Arnett's opinion, because he was not an acceptable medical source, his assessment was not supported by his own observations, and not supported by the fact that her symptoms improved when she was compliant with taking medication.  (Tr. 677.)

**Legal Conclusions**

The Court has carefully reviewed the voluminous record in the case and finds that the ALJ's decision is not supported by substantial evidence in the record as a whole, because the ALJ did not properly evaluate the medical opinion evidence in this case.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and what the claimant can still do despite her impairments and her physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). All medical opinions, whether by treating or consultative examiners are weighed based on (1) whether the provider examined the claimant; (2) whether the provider is a treating source; (3) length of treatment relationship and frequency of examination, including nature and extent of the treatment relationship; (4) supportability of opinion with medical signs, laboratory findings, and explanation; (5) consistency with the record as a whole; (6) specialization; and (7) other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c).

Generally, a treating physician's opinion is given controlling weight, but is not inherently entitled to it. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as [a] whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). A treating physician's opinion will be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "Good reasons for assigning lesser weight to the opinion of a treating source exist where the treating physician's opinions

20

themselves are inconsistent or where other medical assessments are supported by better or more thorough evidence." *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (internal citations omitted). The court reviews "the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but [it is not required for] an ALJ to mechanically list and reject every possible limitation." *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011).

Unfortunately, "the ALJ ignored the law of this circuit, which states that the ALJ must not substitute his opinions for those of the physician." *Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir. 1990) (ALJ erred in substituting his opinion that plaintiff did not seem depressed at hearing for doctor's assessment of plaintiff's mental health); *see also Pate–Fires v. Astrue,* 564 F.3d 935, 946–47 (8th Cir.2009) (ALJs may not "play doctor"); *Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir.1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.") Numerous times in the ALJ's opinion, she discounted the examining and treating physician's opinions by making unsupported inferences and ignoring the substantial consistency among the examining and treating physicians.

For example, the ALJ completely dismissed the GAF scores given by all of the examining and treating providers that indicated Bailey experienced moderate and severe limitations in functions, especially in the areas of maintaining concentration, persistence, and pace. The GAF scores were consistently in the 40's and 50's and the ALJ discounted all of them as being inconsistent with Bailey's activities of daily living. The GAF scale is "a numeric scale used to rate social, occupational, and psychological functioning on a hypothetical continuum of mental-health illness." *Mabry v. Colvin*, 815 F.3d 386, 391 n. 6 (8th Cir. 2016) (citing *Pates-Fire v. Astrue*, 564 F.3d 935, 937 n.1 (8th Cir. 2001)). "The scale ranges from zero to one hundred." *Id.* A GAF score is a "subjective determination that represents the clinician's

judgment of the individual's overall level of functioning." *Jones v. Astrue*, 619 F.3d 963, 973 (8th Cir. 2010). "The most recent edition of the Diagnostic and Statistical Manual of Mental Disorders discontinued use of the GAF scale." *Id.* Even before the DSM-V discontinued use of the GAF scores, the Commissioner declined to fully endorse GAF scores for use in social security and SSI disability programs. *Halverson v. Astrue*, 600 F.3d 922, 930-31 (8th Cir. 2010). "GAF scores may be relevant to a determination of disability based on mental impairments. But an ALJ may afford greater weight to medical evidence and testimony than to GAF scores when the evidence requires it." *Mabry*, 815 F.3d at 391. GAF scores have no direct correlation to the severity standard used by the Commissioner. *Wright v. Colvin*, 789 F.3d 847, 855 (8th Cir. 2015) (citing 65 Fed. Reg. 50746, 50764-65). The ALJ's decision to discount the numerous opinions from 2011 to 2016 from multiple providers who specialize in mental health treatment and evaluation and provided similar diagnoses and assessments is puzzling. Multiple times the ALJ crosses the line, by stating that the examiner "probably" lowered the GAF scores due to occupational and economic problems when discussing Dr. Spencer, Dr. Gholson, and Dr. Adams' opinions. (Tr. 677) Those factors are part of the GAF score. The ALJ's comments about them suggest that the providers improperly included those factors when assessing Bailey's functioning. *See Combs v. Berryhill*, 868 F.3d 704, 709 (8th Cir. 2017) (ALJ erred in relying on his own inferences about what claimant's medical providers' notes meant). Regardless of the exact number of the GAF scores, multiple mental health counselors, psychologists, and her treating psychiatrist endorsed severe and marked limitations over several years.

Next, the activities of daily living cited by the ALJ such as shopping, living alone, and caring for three cats and improvement with medication does not outweigh multiple specialized providers' professional opinions. "It is possible for a person's health to improve, and for the

person to remain too disabled to work." *Cox v. Barnhart*, 345 F.3d 606, 609 (8th Cir. 2003). "[D]oing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to [his] work-related functional capacity." *Hutshell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001). *See e.g., Gude v. Sullivan*, 956 F.2d 791, 794 (8th Cir. 1992) (claimant doing well for someone with systemic lupus erythematosus and it does not contradict doctor's opinion on her inability to work); *Fleshman v. Sullivan*, 933 F.2d 674, 676 (8th Cir. 1991) (A person who has undergone a kidney transplant may indeed "feel better" than she did when she was undergoing dialysis, but that does not compel the conclusion that she was therefore able to work). To determine whether a claimant has the residual functional capacity necessary to be able to work the Court looks to whether he has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *Forehand v. Barnhart*, 364 F.3d 984, 988 (8th Cir. 2004) (citing *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir.1982) (en banc)). None of the instances cited by the ALJ and the Commissioner's brief indicate Bailey's ability to work at a job day in and day out.

Second, the ALJ erred when she gave the most significant weight to Dr. Cremerius' medical testimony. His testimony should not have been given the most weight or any substantial weight. His testimony was contradicted by every examining and treating provider in the record. The Court acknowledges that Dr. Cremerius reviewed the most complete record. But, Dr. Cremerius' testimony is not consistent with the medical evidence in the record from multiple treating and examining sources. The most obvious problem with his testimony is that he repeatedly stated that there was no evidence of psychosis in the record, despite Bailey's treating psychiatrist, treating mental health nurse practitioner, and consultative examiners Dr. Spencer and Dr. Adams (with Ms. White) diagnosing her with major depressive disorder with psychotic

features and pain disorder with psychological and medical factors. His responses to specific questioning about the definition of pain disorder and evidence in the medical record that contradicted his opinion were incomplete.

In summary, the ALJ should have given more weight to the consultative examiners and treating providers who actually examined Bailey and whose opinions were consistent with the record as a whole. The ALJ should not have given Dr. Cremerius' opinion the most weight or any significant weight.

### Conclusion

Based on the foregoing, the Court finds that the Commissioner's decision is not supported by substantial evidence on the record as a whole. The Court has the power to "enter, upon the pleadings and transcript of the record, a judgment, affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. 405(g). When a claimant appeals from the Commissioner's denial of benefits and the denial is improper, out of an abundant deference to the ALJ, the Court remands the case for further administrative proceedings. *Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000).

"Where the total record convincingly establishes disability and further hearing would delay the receipt of benefits, this court has ordered the immediate award of benefits without further delay." *Blakeman v. Astrue*, 509 F.3d 878, 890 (8th Cir. 2007). That standard has not been met here. Therefore, the Court will reverse and remand the Commissioner's decision. Upon remand, the Commissioner should give more weight to the opinions of the consultative examiners and treating providers who actually examined Bailey and whose opinions were consistent with the record as a whole. The Commissioner should not give Dr. Cremerius'

opinion the most weight or any significant weight. Then, the Commissioner must develop a new RFC determination for the time period from the alleged onset date to June 2, 2014 regarding Bailey's mental health impairments.

The Court is aware that upon remand, the ALJ's decision as to non-disability may not change after addressing the deficiencies noted herein, but the determination is one the Commissioner must make in the first instance. *See Buckner*, 213 F.3d at 1011 (when a claimant appeals from the Commissioner's denial of benefits and the denial is improper, out of an abundant deference to the ALJ, the Court remands the case for further administrative proceedings); *Leeper v. Colvin*, No. 4:13-CV-367 ACL, 2014 WL 4713280 (E.D. Mo. Sept. 22, 2014) (ALJ duty to make disability determination). Because Bailey first applied for benefits in 2010, this case was previously remanded, and it is now 2018, the Commissioner is urged to begin proceedings without delay and resolve this case as soon as possible.

Accordingly,

**IT IS HEREBY ORDERED** that the relief which Bailey seeks in her Complaint and Brief in Support of Plaintiff's Complaint is **GRANTED in part and DENIED in part**. [Docs. 1, 16.]

**IT IS FURTHER ORDERED** that the ALJ's decision of February 21, 2017 is **REVERSED** and **REMANDED**.

**IT IS FURTHER ORDERED** that upon remand, the Commissioner should give more weight to the opinions of the consultative examiners and treating providers who actually examined Bailey and whose opinions were consistent with the record as a whole. The ALJ should not give Dr. Cremerius' opinion the most weight or any significant weight. Then, the

Commissioner must develop a new RFC determination for the time period from the alleged onset date to June 2, 2014 regarding Bailey's mental health impairments.

**IT IS FURTHER ORDERED** that a Judgment of Reversal and Remand will be filed contemporaneously with this Memorandum and Order remanding this case to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. § 405(g), sentence 4.

Dated 2nd day of October, 2018.

    /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE